UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                 :

BAYERISCHE LANDESBANK, NEW YORK       :
BRANCH,                                 :      12 Civ. 3294 (LLS)
                                   :
              Plaintiff,         :      **ORAL ARGUMENT**
     -against-             :      **REQUESTED**
                                   :

BARCLAYS CAPITAL INC., BARCLAYS BANK   :
PLC, STATE STREET GLOBAL ADVISORS, STATE :
STREET BANK AND TRUST COMPANY, and    :
STATE STREET CORPORATION,           :
                                   :
             Defendants.         :
                                   :

---------------------------------------------------------------------X

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ...................................................................................................... 2

I.  THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING...... 2

II.  PLAINTIFF'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED ................ 3

  A.  Plaintiff Fails to Plead Particularized Facts Giving Rise to a Strong
      Inference of Scienter ......................................................................... 3

    1.  Plaintiff Fails to Plead Conscious
        Misbehavior by Barclays ...................................................... 4

    2.  Plaintiff Fails to Plead Motive to Defraud
        on the Part of Barclays.......................................................... 9

    3.  Plaintiff Fails to Plead Scienter Against SSgA...................... 11

  B.  Plaintiff Fails to Plead Reliance as a Matter of Law ........................ 15

  C.  Plaintiff Fails to Allege Any Misrepresentation
      Attributable to Defendants ................................................................ 18

  D.  Defendants Did Not Concede the Falsity of Their Statements ......... 21

  E.  Plaintiff Fails to Plead a Violation of Section 20(a) of the
      Exchange Act Against Barclays Bank and State
      Street Corporation ............................................................................. 22

  F.  Plaintiff Fails to Plead Facts Indicating a Domestic Transaction ..... 22

III.  PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE
      DISMISSED ........................................................................................... 23

IV.  PLAINTIFF'S REMAINING CLAIMS AGAINST SSGA SHOULD BE
     DISMISSED ............................................................................................ 25

  A.  Plaintiff Fails to Plead Negligent Misrepresentation
      Against SSgA ..................................................................................... 25

  B.  Plaintiff Fails to Plead Breach of Contract Harming a Third
      Party Against SSgA ........................................................................... 27

i

**Page**

CONCLUSION.....................................................................................................................     29

.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Absolute Activist Value Master Fund Ltd. v. Ficeto,
    677 F.3d 60 (2d Cir. 2012).................................................................................... 22, 23

Aerolineas Galapagos, S.A. v. Sundowner Alexandria, LLC,
    74 A.D.3d 652 (1st Dep't 2010) .............................................................................. 27

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007).................................................................................... 11

Automated Info. Processing, Inc. v. Genesys Solutions Grp., Inc.,
    164 F.R.D. 1 (E.D.N.Y. 1995)................................................................................ 3

Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt., LLC,
    __ F.3d __, 2012 WL 3156441 (2d Cir. Aug. 6, 2012) ......................................... passim

Bd. of Managers of Mason Fisk Condominium v. 72 Berry St., LLC,
    801 F. Supp. 2d 30 (E.D.N.Y. 2011) ...................................................................... 3

Caiola v. Citibank, N.A., New York,
    295 F.3d 312 (2d Cir. 2002).................................................................................... 17

Campo v. Sears Holdings Corp.,
    635 F. Supp. 2d 323 (S.D.N.Y. 2009), aff'd, 371 F. App'x 212 (2d Cir. 2010)..... 7

City of Roseville Emps.' Ret. Sys. v. EnergySolutions Inc.,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011).................................................................... 20, 21

Daly v. Castro Llanes,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998)...................................................................... 27-28

Dandong v. Pinnacle Performance Ltd.,
    2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011)......................................................... 10

Dodona I LLC v. Goldman, Sachs & Co.,
    847 F. Supp. 2d 624 (S.D.N.Y. 2012)..................................................................... 5

ECA and Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009)................................................................................... 11

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
    2002 WL 31426310 (S.D.N.Y. Oct. 29, 2002)....................................................... 17

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
    375 F.3d 168 (2d Cir. 2004)................................................................................... 26

**Page(s)**

Foley v. Transocean Ltd.,
__ F. Supp. 2d __, 2012 WL 933070 (S.D.N.Y. Mar. 20, 2012)............................ 8-9

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,
376 F. Supp. 2d 385 (S.D.N.Y. 2005)...................................................................... 10

Ganino v. Citizens Utils. Co.,
228 F.3d 154 (2d Cir. 2000)................................................................................... 17

GEO Grp., Inc. v. Cmty. First Servs.,
2012 WL 1077846 (E.D.N.Y. Mar. 30, 2012)........................................................ 28

Global Intellicom, Inc. v. Thomson Kernaghan & Co.,
1999 WL 544708 (S.D.N.Y. July 27, 1999) ............................................................ 7

HSH Nordbank AG v. UBS AG,
95 A.D.3d 185 (1st Dep't 2012) ............................................................... passim

In re Alvaro,
2005 WL 3789132 (Bankr. S.D.N.Y. Apr. 05, 2005)............................................. 3

In re Citigroup, Inc. Bond Litig.,
723 F. Supp. 2d 568 (S.D.N.Y. 2010)...................................................................... 17

In re Citigroup Inc. Sec. Litig.,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)................................................................... 9, 12

In re DDVAP Direct Purchaser Antitrust Litig.,
585 F.3d 677 (2d Cir. 2009)................................................................................... 28

In re Fannie Mae 2008 Sec. Litig.,
2012 WL 3758537 (S.D.N.Y. Aug. 30, 2012)......................................................... 19

In re MBIA Sec. Litig.,
700 F. Supp. 2d 566 (S.D.N.Y. 2010)................................................................... 17, 22

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
273 F. Supp. 2d 351 (S.D.N.Y. 2003), aff'd sub nom. Lentell v. Merrill Lynch &
Co., 396 F.3d 161 (2d Cir. 2005)............................................................................ 14

In re Nat'l Century Fin. Enters., Inc.,
846 F. Supp. 2d 828 (S.D. Ohio 2012) .................................................................. 19

In re PXRE Grp., Ltd. Sec. Litig.,
600 F. Supp. 2d 510 (S.D.N.Y. 2009), aff'd sub nom. Condra v. PXRE Grp. Ltd.,
357 F. App'x 393 (2d Cir. 2009) ............................................................................ 12

**Page(s)**

In re SLM Corp. Sec. Litig.,
    740 F. Supp. 2d 542 (S.D.N.Y. 2010).......................................................................    10

Janus Capital Grp., Inc. v. First Derivative Traders,
    131 S. Ct. 2296 (2011)............................................................................... 1, 19, 20

JPMorgan Chase Bank v. Liberty Mut. Ins. Co.,
    189 F. Supp. 2d 24 (S.D.N.Y. 2002).......................................................................    17

Kalin v. Xanboo, Inc.,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007).......................................................................    22

Kaufman v. Cohen,
    307 A.D.2d 113 (1st Dep't 2003) ...........................................................................    25

Krys v. Butt,
    2012 WL 2331485 (2d Cir. June 20, 2012) ............................................................    25

Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.,
    2012 WL 1352590 (2d Cir. Apr. 19, 2012) ............................................................    passim

Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.,
    821 F. Supp. 2d (S.D.N.Y. 2011) ...........................................................................    4-5

M & T Bank Corp. v. Gemstone CDO VII, Ltd.,
    23 Misc.3d 1105(A) (N.Y. Sup. Ct. 2009)...............................................................    17

M & T Bank Corp. v. Gemstone CDO VII, Ltd.,
    68 A.D.3d 1747 (1st Dep't 2009) ...........................................................................    26

Overseas Private Inv. Corp. v. Furman,
    2012 WL 967458 (S.D.N.Y. Mar. 14, 2012) ............................................................    28

Pac. Invs. Mgmt. Co. v. Mayer Brown LLP
    603 F.3d 144 (2d Cir. 2010), cert denied sub nom. RH Capital Assocs. LLC v.
    Mayer Brown LLP, 131 S. Ct. 3021 (2011) ............................................................    19

Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
    Commerce,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)......................................................................    8

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,
    632 F.3d 762 (1st Cir. 2011)..................................................................................    5

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)...................................................................................    28

**Page(s)**

Sheppard v. Manhattan Club Timeshare Assoc., Inc.,
2012 WL 1890388, (S.D.N.Y. May 23, 2012) ...................................................... 28

Shields v. Citytrust Bancorp, Inc.,
25 F.3d 1124 (2d Cir. 1994)................................................................................... 12, 28

Silvers v. State,
68 A.D.3d 668 (1st Dep't 2009) ............................................................................ 27

Space Coast Credit Union v. Barclays Capital, Inc.,
2012 WL 946832 (S.D.N.Y. Mar. 20, 2012) ......................................................... passim

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
531 F.3d 190 (2d Cir. 2008).................................................................................... 6, 9-10

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007)............................................................................................... 12

Three Crown Ltd. P'ship v. Caxton Corp.,
817 F. Supp. 1033 (S.D.N.Y. 1993)....................................................................... 14

Wright v. Ernst & Young LLP,
152 F.3d 169 (2d Cir. 1998)................................................................................... 19

**Rules and Statutes**

2d Cir. R. 32.1(b)(1) ......................................................................................................... 5

Fed. R. App. P. 32.1 .......................................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that the Amended Complaint should be dismissed.[1]
Plaintiff's attempt to avoid the clear holding of <u>Bayerische Landesbank, New York Branch v.
Aladdin Capital Management, LLC</u>, __ F.3d __, 2012 WL 3156441 (2d Cir. Aug. 6, 2012)—that
this very Plaintiff lacks standing to pursue a lawsuit—easily fails.  Plaintiff ultimately admits as
much, asking this Court to allow it to substitute Bayerische Landesbank as the named plaintiff
under Fed. R. Civ. P. 17.  That rule provides Plaintiff no relief, however, because it cannot be
applied where a complaint should be dismissed for lack of standing.

More fundamentally, Plaintiff provides no valid answer to the Second Circuit's decision
in <u>Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.</u>, 2012 WL 1352590 (2d Cir. Apr.
19, 2012), affirming the dismissal of substantively identical allegations by another German bank
that purchased notes in another CDO.  As here, the plaintiff claimed that a CDO underwriter
"stuffed" a CDO with assets it "knew" would fail, but the plaintiff did not adequately specify
what the underwriter knew or how.  And as here, the CDO's offering circular contained
substantively identical "No Reliance" disclaimers that the Second Circuit held barred a showing
of reasonable or justifiable reliance as a matter of law.  Plaintiff's Opposition boils down to a
request that this Court ignore <u>Landesbank</u> because it is an unpublished decision.  Plaintiff
provides no reason for this Court to ignore the decision of a panel of the Second Circuit,
particularly given that the decision applied long-standing requirements for pleading scienter
where a plaintiff claims that defendants "knew" something contrary to their public statements.

Plaintiff also fails to remove this case from the clear confines of <u>Janus Capital Group,
Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296 (2011).  Plaintiff nowhere disputes that the

---

[1]     Terms defined in Defendants' moving brief are used herein.

Markov Offering Circular expressly attributed its statements to the issuer (Markov CDO I, Ltd.), and expressly provided that the statements were not attributed to Defendants. Plaintiff does not even attempt to address or distinguish the long line of binding Second Circuit precedent that, like Janus, imposes a bright-line rule for liability for alleged misrepresentations in securities documents: absent express attribution, there can be no liability. That bright-line rule requires dismissal here.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING

Defendants' moving papers demonstrated that the only plaintiff here—the New York Branch of Bayerische Landesbank—lacks standing to sue, as held by the Second Circuit just last month in a binding, precedential decision (not a "non-controlling summary order," as Plaintiff incorrectly states, Opp. at 2). Def. Br. at 10-11; Aladdin, 2012 WL 3156441, *7. Plaintiff insists that the Circuit "did not hold that the New York Branch, suing alone, would lack standing." Opp. at 49. But that is precisely what the Circuit held: "Aladdin argues that Bayerische's New York branch lacks standing to sue, and thus is not a proper party to this case. We agree." Aladdin, 2012 WL 3156441, *7. The Circuit did not need to affirmatively dismiss Plaintiff's claims in Aladdin for lack of standing because Bayerische Landesbank had also been named and was a proper plaintiff. See id. Here, however, the Amended Complaint names only Plaintiff, which unquestionably lacks standing to pursue this case.

Effectively conceding its lack of standing, Plaintiff—in a footnote and at the very end of its brief—asks to substitute in Bayerische Landesbank under Fed. R. Civ. P. 17(a)(3). That rule cannot save the Amended Complaint from dismissal, because it cannot be applied where a complaint should be dismissed for lack of standing. "Standing is jurisdictional, and the Court lacks subject matter jurisdiction over the entire matter if the plaintiff lacks standing at the time of

filing the complaint." In re Alvaro, 2005 WL 3789132, *6 (Bankr. S.D.N.Y. Apr. 05, 2005) (refusing to apply Rule 17); accord Bd. of Managers of Mason Fisk Condominium v. 72 Berry St., LLC, 801 F. Supp. 2d 30, 39-40 (E.D.N.Y. 2011). "It is well settled that substitution of a real party in interest may be done only upon a showing of an honest and understandable mistake or some confusion as to who the proper party was." Alvaro, 2005 WL 3789132, *5; see also Automated Info. Processing, Inc. v. Genesys Solutions Grp., Inc., 164 F.R.D. 1, 3 (E.D.N.Y. 1995) (declining to substitute plaintiff where information pertaining to real party in interest was within plaintiff's ability to ascertain when case was filed).  Plaintiff does not attempt to make this showing but instead insists that it has standing.  Opp. at 48-49.[2]

Because Plaintiff lacks standing, the Amended Complaint should be dismissed.[3]

## II.  PLAINTIFF'S FRAUD-BASED CLAIMS SHOULD BE DISMISSED

### A.   Plaintiff Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter

Contrary to Plaintiff's claim, Defendants have not argued that the Second Circuit's decision in Landesbank "has somehow changed the law of scienter." Opp. at 18.  To the contrary, as explained in Defendants' moving papers, Landesbank applied bedrock principles for pleading scienter in affirming the dismissal of virtually identical CDO-related fraud claims: Where plaintiffs contend defendants had access to contrary facts, "they must specifically identify the reports or statements containing this information." Landesbank, 2012 WL 1352590, *2; see also Def. Br. at 14-17.  Plaintiff's insistence that the Amended Complaint contains more detailed

---

[2]      Nor could Plaintiff show an honest mistake.  As a party to Aladdin, Plaintiff unquestionably was aware of the Circuit's decision.  Moreover, before Defendants filed their motion to dismiss, counsel for Barclays brought Aladdin to the attention of Plaintiff's counsel here and asked if Plaintiff would seek leave to further amend its Amended Complaint to name Bayerische Landesbank.  Plaintiff refused, intentionally choosing to name only Plaintiff.

[3]      To the extent Plaintiff now wants to further amend its Amended Complaint to name Bayerische Landesbank, it must seek leave of Court under Rule 15 because Plaintiff has already amended once as of right and the 21-day period in Rule 15(a)(1)(B) has passed.  Given all of the other deficiencies in Plaintiff's Amended Complaint noted in Defendants' dismissal papers, further amendment would be futile.

scienter allegations than those in <u>Space Coast</u>, <u>see</u> Opp. at 16, is likewise unavailing, as this Court did not discuss or analyze the scienter allegations in that case.  For the reasons set forth below, Plaintiff falls far short of its burden to plead particularized facts giving rise to a strong inference of scienter.

1.    **<u>Plaintiff Fails to Plead Conscious Misbehavior by Barclays</u>[4]**

While Plaintiff begrudgingly concedes that the allegations concerning Barclays' conscious misbehavior are "similar" to those raised in <u>Landesbank</u>, Opp. at 32, the allegations are substantively identical.  Plaintiff limply attempts to distinguish <u>Landesbank</u> by claiming that, here, "the gist of the claims" is that Barclays "secretly controlled and manipulated" Markov's collateral selection process, whereas in <u>Landesbank</u>, the plaintiff supposedly alleged that the underwriter and the collateral manager knew that the credit quality of the CDO's collateral was worse than represented to investors.  Opp. at 17.

Plaintiff is incorrect; the theories of scienter are the same in both cases.  As demonstrated by its own pleading, Plaintiff's theory of scienter has two necessary prongs:  (1) Barclays secretly selected Markov's collateral (2) <u>so that</u> Barclays could include collateral that it "<u>knew</u>" would fail.  <u>See, e.g.,</u> ¶ 2 ("[C]ontrary to the statements in Markov's offering materials, <u>Barclays itself</u> selected and even created certain of the assets referenced by Markov because it <u>knew</u> those assets would fail[.]"); <u>see also</u> ¶¶ 65-87, 130 ("Barclays used its consent power to cause Markov to include assets Barclays believed would fail.").  The necessary second half of Plaintiff's scienter theory is the very same as in <u>Landesbank</u>:  that a CDO underwriter included assets that it "knew" would fail.  See <u>Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.</u>, 821 F.

---

[4]     The Opposition nowhere disputes that Plaintiff is pursuing only a "conscious misbehavior" theory as to Barclays, not a recklessness theory.  <u>See</u> Opp. at 21-24.

4

Supp. 2d, 616 619-20 (S.D.N.Y. 2011); Def. Br. at 15.[5]  Recognizing that the Second Circuit's affirmance in <u>Landesbank</u> is fatal to its scienter theory, Plaintiff falls back on a request that this Court ignore the decision because it is an unpublished summary order.  Opp. at 16-17.  But the Federal Rules of Appellate Procedure and the Second Circuit's own rules expressly provide that summary orders may be cited.  Fed. R. App. P. 32.1; 2d Cir. R. 32.1(b)(1).  Plaintiff provides no reason to ignore the decision of a panel of the Second Circuit, nor does Plaintiff provide any reason to believe that a panel reviewing dismissal here would do something contrary to what was done regarding substantively identical allegations in <u>Landesbank</u>.

As demonstrated in Defendants' moving papers, Plaintiff's allegations in support of its scienter theory—that Barclays "knew" Markov's collateral would fail—must be dismissed for two reasons.  <u>First</u>, Plaintiff fails to identify any specific reports or statements that supposedly provided Barclays with its purported secret knowledge that the collateral would fail.  <u>See</u> Def. Br. at 13-24.  <u>Second</u>, Plaintiff fails to tie its allegations of fraud in connection with the RMBS referenced in Markov—alleged abandonment of mortgage originator underwriting guidelines, inflated appraisals, and misleading credit ratings, ¶¶ 65-66, 68, 76, 133-40—to the specific mortgages underlying those RMBS, as many courts have required.  Def. Br. at 17 n.9.[6]

---

[5]  Indeed, the plaintiff in <u>Landesbank</u> also alleged misrepresentations regarding the collateral selection process. Ex. J. ¶¶ 15, 107.

[6]  Plaintiff cannot excuse itself from this second, tying requirement by claiming that this is not an RMBS case. Opp. at 28-29. Again, Plaintiff's theory requires it to allege and prove the very same allegations that are made in RMBS cases: that Barclays "knew" the RMBS referenced in Markov would fail because, supposedly, the mortgages underlying those RMBS were not originated per stated guidelines and had inflated appraisals, and the RMBS's high credit ratings hid the securities' true risk. <u>Dodona I LLC v. Goldman, Sachs & Co.</u>, 847 F. Supp. 2d 624 (S.D.N.Y. 2012), and <u>Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.</u>, 632 F.3d 762 (1st Cir. 2011), are not to the contrary. <u>Dodona</u> concluded that, "[o]n their own, allegations regarding due diligence and underwriting might not satisfy the heightened pleading standard of Rule 9(b) and the PSLRA." 847 F. Supp. 2d at 643 (considering additional factual bases for scienter, including inflammatory internal emails showing plan to profit from housing collapse). <u>Nomura</u>, meanwhile, concluded that a complaint <u>must</u> link allegations of alleged abandonment of underwriting practices "with specific lending banks that supplied the mortgages that underpinned" the RMBS. <u>Nomura</u>, 632 F. 3d at 773. Indeed, <u>Nomura</u> affirmed dismissal of a number of the plaintiff's RMBS allegations, because, as here, the plaintiff failed to tie its allegations to the specific mortgages underlying the RMBS at issue.

Plaintiff's Opposition recycles the Amended Complaint's two primary allegations regarding Barclays' purported scienter: that Barclays "knew" Markov's collateral would fail because of what Barclays supposedly learned through (1) due diligence performed when purchasing and securitizing over $13 billion in mortgages, including from mortgage originators whose loans backed RMBS referenced in Markov; and (2) warehouse lending relationships with mortgage originator New Century.  Opp. at 5-6, 22.  Plaintiff nowhere disputes that these are the identical allegations made and rejected in Landesbank, because they do not "specifically identify the reports or statements" that led to the supposed secret knowledge.  Landesbank, 2012 WL 1352590, *2; Def. Br. at 15-16, 18-20.  Likewise, Plaintiff nowhere disputes that the only specific document it vaguely identifies—the Clayton Report, see ¶ 67; Opp. at 28—is the identical document found insufficient to plead scienter in Landesbank.  Landesbank, 2012 WL 1352590, *2; Def. Br. at 15-16, 19.  Plaintiff simply fails to allege (i) how and when, either during a due diligence process or warehouse lending relationship, Barclays supposedly learned the allegedly secret contrary information concerning defective mortgages underlying RMBS; (ii) what specifically that contrary information was; and (iii) whether any of the allegedly defective mortgages were actually included in the RMBS in Markov's portfolio.  Def. Br. at 18-20; see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008) (rejecting as insufficient allegation that senior executives had access to "collection data" that indicated their statements about mortgage-backed securities were false).[7]

The failure to adequately allege Barclays' purported scienter leaves Plaintiff grasping for straws with only scattershot allegations, none of which remotely raises the requisite "powerful," "cogent," and "compelling" inference, Def. Br. at 13, that Barclays "knew" the Markov assets

---

[7]     Plaintiff also recycles quotes from unnamed New Century employees who level bald, conclusory accusations that "banks like Barclays saw problems" without any specifics, and who actually say nothing about Barclays other than that it purchased New Century loans.  Opp. at 22.

would fail:

- **Barclays' Purchase of EquiFirst**. Plaintiff continues to point to the fact that Barclays "insisted" on paying a low price to acquire mortgage originator EquiFirst in 2007. Opp. at 23. That is called smart bargaining in the midst of a massive economic recession—not scienter. Nor does the purchase possibly indicate what Barclays knew about the RMBS included or referenced by Markov.

- **Bear Stearns Lawsuit**. Plaintiff twists a single sentence from a lawsuit that Barclays filed against Bear Stearns—without attaching Barclays' actual pleading—to claim that Barclays "knew" in February 2007 that there was "extreme volatility and dropping prices in ABX indices that track" certain asset-backed securities, including those tied to sub-prime mortgages. Opp. at 23. Irrespective of the fact that this sentence has nothing to do with Markov or the RMBS referenced in it, the selectively quoted language does not even speak to what Barclays knew or believed about RMBS in February 2007. Rather, Barclays' complaint alleges Barclays believed that the Bear Stearns investment, which included asset-backed securities based on subprime mortgages, would perform well, <u>increased</u> its investment in March 2007, and continued to participate in the deal into July 2007. Third Am. Compl., ¶¶ 32, 37, 74 & 84, No. 07-cv-11400 (LAP) (July 15, 2008), ECF No. 20.[8]

- **Corvus CDO**. Plaintiff inappositely rehashes its reference to a different Barclays CDO that was underwritten seven years before Markov by different employees and contained different collateral. Opp. at 19-20, 29. Plaintiff's allegations are based entirely on the allegations of another German bank that sued Barclays in England, claiming breach of duty and breach of contract. Unlike the allegations here, there were no assertions of fraud, let alone claims subject to heightened pleading requirements. Tellingly, Plaintiff does not attach a copy of this pleading to its Amended Complaint. Nor does Plaintiff indicate that the Corvus plaintiff made <u>any</u> allegations detailing how Barclays supposedly "knew" that the Corvus assets were bad (indeed, the Corvus plaintiff made no such allegations). To meet its obligation here to plead fraud with particularity, Plaintiff cannot rely on the unproven allegations of another plaintiff that did not even attempt to plead scienter under the strict requirements imposed by the Supreme Court and the Second Circuit. Def. Br. at 21-22.[9]

- **LIBOR Investigation**. Plaintiff levels the bald accusation that there was a "corporate culture where fraud was simply part of doing business" at Barclays, based on a <u>single</u> email that undisputedly had nothing to do with CDOs (or Markov) and was sent by a Barclays employee who likewise had no responsibility for CDOs (or Markov). Opp.

---

[8]    Because Plaintiff cannot selectively quote from an unrelated complaint, this Court may and should consider the full text of the referenced document. See Campo v. Sears Holdings Corp., 635 F. Supp. 2d 323, 328 n.44 (S.D.N.Y. 2009), aff'd, 371 F. App'x 212 (2d Cir. 2010).

[9]    Global Intellicom, Inc. v. Thomson Kernaghan & Co., 1999 WL 544708, at *9 (S.D.N.Y. July 27, 1999), demonstrates why Plaintiff has failed to plead scienter. Opp. at 21-22. There, the plaintiff alleged a pattern of misconduct based on alleged manipulation schemes involving <u>ten</u> different targets during the <u>same</u> time period. Plaintiff here points to a single Barclays CDO underwritten seven years earlier.

at 6.  Plaintiff's attempt to argue that a regulatory investigation with respect to setting LIBOR was indicative of Barclays' supposed conscious misconduct regarding Markov is thus nothing more than empty rhetoric.

Given these flawed allegations, Plaintiff's bravado that the Amended Complaint "cites internal emails, as well as testimony and documents from other litigation" involving Barclays, Opp. at 16, is pure fabrication.  As demonstrated above, the Amended Complaint references only a single internal Barclays email that has nothing to do with CDOs, cites no testimony from Barclays, and mischaracterizes Barclays' complaint in a single other case that has nothing to do with Markov.

Apparently recognizing that its Amended Complaint is devoid of any sufficient scienter allegation, Plaintiff disingenuously seizes on a supposed "secret agreement" between Barclays and State Street.  Opp. at 1, 7-8, 18, 24, 47.  That is nonsense.  The agreement is nothing more than a routine engagement letter that, per common industry practice, exists between underwriters and collateral managers.  The fact that Defendants submitted the letter with the motion to dismiss disposes of any assertion that it is "secret."  More fundamentally, the engagement letter—which clearly states that SSgA would select Markov's collateral—says nothing whatsoever about Barclays' supposed knowledge that the RMBS referenced in Markov would fail.  Ex. Q at 4.

Plaintiff also insists that Barclays' knowledge should be presumed simply "by virtue of its role in [the] transaction."  Opp. at 21.  If Plaintiff were right, scienter would automatically be pleaded against every securities and CDO underwriter.  The fact that Barclays structured and underwrote Markov does not show that it "knew" Markov's assets would fail.  Instead, Plaintiff must allege what Barclays learned (and how) regarding those assets.  See generally Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight."); accord Foley v.

Transocean Ltd., __ F. Supp. 2d __, 2012 WL 933070, *10 (S.D.N.Y. Mar. 20, 2012).[10]

Finally, faced with the damning fact that the Second Circuit affirmed the dismissal of virtually identical fraud claims in Landesbank, Plaintiff instead turns to Aladdin for support. Opp. at 18. Plaintiff can find no comfort in Aladdin with respect to pleading scienter, as that case did not involve fraud claims. 2012 WL 3156441, *1. In fact, the Second Circuit expressly stated that had Plaintiff asserted a fraud claim, the fraud claim would have failed:

> Admittedly, Bayerische does not allege with particularity what the source of an objective market-based spread would be. Bayerische also does not allege whether Aladdin ever challenged GSCM's pricing on the Reference Entities, or made any efforts to confirm that the spreads were reasonably tied to the market spread through the Reference Dealer procedures outlined in the PMA. But this is not a claim for fraud, which pursuant to Federal Rule of Civil Procedure 9(b), would require Bayerische to plead with particularity.

Id. *19 (emphasis added).

## 2. Plaintiff Fails to Plead Motive to Defraud on the Part of Barclays

Plaintiff's Opposition strenuously avoids labeling Barclays' supposed motive and ultimately concedes that there is only one motive attributed to Barclays: profit. See Opp. at 19 ("Barclays . . . acted in its own interest as the short counterparty with interest adverse to the note investors."); see also ¶¶ 2, 9, 59, 77, 130. It is bedrock law that universal corporate goals, such as the desire to increase profits and manage risks, do not establish actionable motive. See Def. Br. at 23. On motive, Plaintiff does not even attempt to distinguish the instant case from Landesbank, where the Second Circuit rejected the identical motive allegation against a CDO underwriter. Landesbank, 2012 WL 1352590, *2 (allegation that CDO underwriter "bet against" CDO is no more than "a general profit motive common to all corporations"); see also Dynex,

---

[10]     In re Citigroup Inc. Sec. Litig., 753 F. Supp. 2d 206, 213 (S.D.N.Y. 2010), Opp. at 21, does not announce the overbroad rule Plaintiff articulates. Far from holding that the defendants acted with scienter simply because they played a role in a particular transaction, the court found that the plaintiffs had alleged specific facts regarding the defendants' supposed secret knowledge.

531 F.3d at 196 (that RMBS issuer allegedly sought to avoid "fully disclosing the impaired quality of the [mortgage] collateral" for mortgage-backed security was general motive to maintain appearance of profitability).

Bizarrely, Plaintiff insists that Dandong v. Pinnacle Performance Ltd., 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011)—which predated the affirmance of Landesbank—is somehow "dispositive," Opp. at 19, when the Second Circuit's decision in Landesbank is not. Plaintiff is wrong. A decision from another district court can never bind this Court, but Dandong is not even persuasive here. In Dandong, the CDO underwriter allegedly never disclosed to investors that it was acting as a synthetic asset counterparty. Compl., ¶¶ 150, 262, 266, No. 10-cv-8086 (LBS), ECF. No. 1. In addition, the deal documents in Dandong "provided almost no disclosures concerning, and no explanation of, synthetic CDOs." Id. ¶ 263. In stark contrast, Markov's structure was fully disclosed to Plaintiff, and Plaintiff does not even try to claim otherwise. Plaintiff was explicitly warned about Barclays' role as the initial synthetic counterparty, knew that Markov consisted of 90% synthetic collateral, including up to 35% in other CDOs, and received detailed information regarding the risks associated with synthetic assets. See Ex. G at 40-41, 55-57, 74, 124, 130-31; ¶¶ 53, 55, 56-58. There can be no motive to defraud when Barclays acted with such transparency. See Def. Br. at 20.[11]

Nor can Plaintiff establish motive by relying on unproven allegations in another lawsuit about Barclays' Corvus CDO, underwritten seven years earlier. Opp. at 19-20. Plaintiff falsely asserts that "many of the same Barclays employees who perpetrated the Corvus fraud also

---

[11]   Plaintiff's reliance on Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F. Supp. 2d 385, 404 (S.D.N.Y. 2005), Opp. at 19, fails, as the defendants' alleged self-dealing was undisclosed in that case. In addition, the motive allegations involved transactions by individual defendants who "sold other personal assets for a profit ... and transferred the monies to accounts in their wives' names." Fraternity Fund Ltd, 376 F. Supp. 2d at 404. Similarly, in In re SLM Corp. Securities Litigation, 740 F. Supp. 2d 542, 558 (S.D.N.Y. 2010), Opp. at 20-21, the court found that the plaintiffs adequately alleged motive because the individual defendant stood to gain more than $200 million from the artificial inflation of share prices.

perpetrated the Markov fraud," Opp. at 20, but the Amended Complaint does not identify a single Barclays employee who worked on both CDOs. It merely alleges that the Barclays' CDO team that structured Markov reported to Vince Balducci, who was Barclays' head of global credit derivatives during the lifespan of both deals. ¶ 64.

While Plaintiff insists that it alleges a "complex" scheme, Opp. at 20, that does not manufacture motive. As in Landesbank and Dynex, Plaintiff claims nothing more than a general desire to profit or maintain the appearance of profitability, which is unquestionably insufficient.[12]

### 3. Plaintiff Fails to Plead Scienter Against SSgA

Plaintiff has likewise failed to plead scienter against SSgA. For Plaintiff's Section 10(b) claim against SSgA to survive a motion to dismiss, Plaintiff must allege facts that (i) "constitut[e] strong circumstantial evidence of conscious misbehavior or recklessness," or (ii) show that SSgA had both "motive and opportunity" to commit fraud. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Because SSgA earned its management fees solely on the basis of the value of the collateral assets under management, and the performance of those assets over time, its only conceivable motive was to select assets that would help Markov perform well. See Def. Br. at 26-28; see also Ex. G at 278, 298-99. SSgA thus lacked any incentive to participate in the alleged fraud. See ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 203 (2d Cir. 2009) (upholding dismissal of Section 10(b) claims on scienter grounds because "[i]t seems implausible to have

---

[12] The Opposition also underscores that Plaintiff's motive theory makes no sense. Neither the Amended Complaint nor Plaintiff's Opposition disputes that: (i) Barclays served as Markov's Initial Synthetic Asset Counterparty, with the intention of selling off the so-called short interest; (ii) Barclays separately was required, at the direction of State Street, to use all commercially reasonable efforts to enter into "Mirror Swaps" with six other dealers that likewise would sell off Barclays' so-called short interest; and (iii) if the referenced assets performed poorly and Markov's cash was insufficient to make the counterswap payments, then Barclays was required to accept Class S Notes, thus exposing it to Markov's credit risk. See Def. Br. at 24 n.16; see also id. at 7 n.5. Indeed, Plaintiff admits that it was typical for underwriters to serve as initial swap counterparty, ¶ 46, and that Barclays was obligated to accept Class S Notes, thus exposing it to Markov's credit risk. Opp. at 4.

both an intent to earn excessive fees for the corporation and also an intent to defraud Plaintiffs by losing vast sums of money."). Plaintiff appears to agree. In response to SSgA's argument that Plaintiff's Section 10(b) claim should be dismissed, Plaintiff never argues that SSgA was motivated to allow Markov to fail.[13] Rather, Plaintiff's response to SSgA's scienter argument eschews any attempt to justify motive and opportunity pleading and instead focuses exclusively on SSgA's alleged recklessness. Opp. at 24-27.

This omission has two important consequences. First, where a plaintiff has failed to allege motive, "the strength of the circumstantial allegations of conscious misbehavior or recklessness must be correspondingly greater." In re PXRE Grp., Ltd. Sec. Litig., 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009), aff'd sub nom. Condra v. PXRE Grp. Ltd., 357 F. App'x 393 (2d Cir. 2009). Plaintiff's non-specific allegations of recklessness, discussed below, do not even approach this raised bar. Second, Plaintiff has failed to create an inference of scienter "at least as compelling as any opposing inference one could draw from the facts alleged." See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007). The strength of Plaintiff's allegations of recklessness should be viewed in light of the fact Plaintiff has offered no coherent explanation for why SSgA would want Markov to fail, or even why SSgA would ignore such an allegedly apparent danger. See In re Citigroup, Inc. Sec. Litig., 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010) (holding that recklessness exists only where "the danger was either known to the defendant or so obvious that the defendant must have been aware of it"). Simply put, Plaintiff's allegations against SSgA defy economic reason. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994) (where plaintiff's theory defies economic reason, no reasonable inference of fraudulent intent). As a result, its Section 10(b) claim should be dismissed.

---

[13]    Plaintiff suggests that State Street had "no reason to care that Barclays was choosing Markov's assets." Opp. at 11. This implausible claim defies logic—because its management fee was linked to the performance of the collateral assets, SSgA's obvious interest was to ensure that the CDO performed well. Def. Br. at 26-28.

In Defendants' moving papers, SSgA argued that Plaintiff has failed to allege facts specific to Markov that could amount to "strong circumstantial evidence of conscious misbehavior or recklessness." Def. Br. at 31-35. Plaintiff's Opposition does not respond to SSgA's argument. Instead, it simply re-states the defective allegations. Plaintiff cites a "prior abdication" of SSgA's CDO duties, purportedly reflected in a February 2012 Consent Order regarding the Carina CDO. Opp. at 24. However, as explained in Defendants' moving papers, the settlement does not in any way reflect or concern an "abdication." The Consent Order, entered pursuant to a statute that does not require a showing of intent, does not say that SSgA abdicated its role but, to the contrary, recites that SSgA—and not any other party—"managed the selection, acquisition and sale of collateral assets for" Carina. Def. Br. at 29. Moreover, as described in Defendants' moving papers, the emails cited in the Consent Order only serve to reinforce SSgA's determination to remain autonomous. Id. at 29-30. The Consent Order addresses the more limited claim that SSgA should have disclosed conversations with Magnetar—an investor in Carina—as well as the limited knowledge SSgA had about Magnetar's positions. Contrary to Plaintiff's disingenuous arguments, Opp. at 24-25, however, there is not a single allegation in the Consent Order that SSgA deferred in any way to Magnetar, nor knowingly selected—or allowed to be selected—an underperforming or lesser-quality asset.[14]

Plaintiff apparently hopes that the mere fact that the Consent Order also involved a CDO transaction will blind the Court to the critical distinctions between that matter and this case. But Plaintiff cannot avoid the fact that Carina and Markov are two different transactions and distinct CDOs, fatally undermining its insistence that its allegations are sufficiently specific. See Def.

---

[14]    Drawing a comparison to Carina, Plaintiff cites statements in the Markov Engagement Letter that it believes contradict statements in the Markov Offering Circular. Opp. at 25 n.15. It is unclear, however, why "advis[ing]" State Street about asset selection is inconsistent with Barclays' consent right. In any event, the Engagement Letter certainly makes clear it is State Street that will be doing the analysis and asset selection for Markov, subject only to Barclays' consent right. Ex. Q at 4.

Br. at 29; see also In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351,

374 (S.D.N.Y. 2003), aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161 (2d Cir.

2005) (allegations of fraud in connection with other securities do not satisfy Rule 9(b) or the

PSLRA with respect to securities purchased by plaintiff); Three Crown Ltd. P'ship v. Caxton

Corp., 817 F. Supp. 1033, 1040 n.11 (S.D.N.Y. 1993) (allegations regarding other lawsuits

cannot substitute for specific facts supporting strong inference of scienter in case at bar.).

Indeed, in its papers, Plaintiff nowhere even attempts to confront the absence of any

specific tie between its allegations and conduct actually related to selecting assets for Markov.

Plaintiff's reference to other litigation involving State Street-managed bond funds only confirms

that other SSgA-managed investment pools, in addition to Markov, had substantial exposure to

subprime—precisely what one would expect if SSgA genuinely expected those securities to

thrive, not fail. Opp. at 25. The quoted testimony by former SSgA CIO Sean Flannery is both

non-specific and benign; Flannery merely notes what a myriad of public sources confirm: that

the investment bank typically designs and structures the CDO. Id. Further, as discussed in

Defendants' moving papers, Plaintiff's misleading allegations regarding SSgA's knowledge of

market events and the ABX index do not in any way plead—let alone in a particularized way that

gives rise to a compelling inference of fraudulent intent—that SSgA knew of relevant

"undisclosed risks," Opp. at 26, or that inappropriate assets were selected for Markov. Def. Br.

at 33.[15] Finally, non-specific allegations regarding SSgA's plan to improve technology resources

do not in any way support a claim that SSgA misrepresented its process for analyzing bonds for

potential inclusion in Markov. Opp. at 26-27. Plaintiff has thus failed to plead particularized

facts constituting strong circumstantial evidence of SSgA's conscious misbehavior or

---

[15]     It remains unclear what basis Plaintiff even has for its allegation regarding the ABX index.

recklessness regarding Markov, and Plaintiff's Section 10(b) claim should thus be dismissed.

**B.      Plaintiff Fails to Plead Reliance as a Matter of Law**

Defendants' moving papers demonstrated that Plaintiff cannot plead reasonable or

justifiable reliance as a matter of law given the "No Reliance" disclaimers included in the

Markov Offering Circular. Def. Br. at 35-38. Plaintiff incorrectly asserts that this Court already

rejected this argument in Space Coast. Opp. at 29. In Space Coast, this Court considered

whether the extensive risk disclosures in the Markov Offering Circular precluded a showing of

reliance as a matter of law, and concluded that the issue was instead "intensely fact-specific."

Space Coast Credit Union v. Barclays Capital, Inc., 2012 WL 946832, *1-2 (S.D.N.Y. Mar. 20,

2012). The Court did not address Plaintiff's "No Reliance" disclaimers in the Offering Circular.

In any event, this Court's decision pre-dated the Second Circuit's affirmance in Landesbank,

squarely holding that non-reliance disclaimers in a CDO offering circular preclude a showing of

reliance as a matter of law. 2012 WL 1352590, *2.

Again, Plaintiff begrudgingly concedes that the "No Reliance" disclaimers are "similar"

to those in Landesbank. Opp. at 32. Indeed, they are substantively identical and preclude any

pleading of reliance by Plaintiff here. See Def. Br. at 8-9, 37.

Plaintiff's attempt to distinguish Landesbank and HSH Nordbank AG v. UBS AG, 95

A.D.3d 185 (1st Dep't 2012), fails. Again, Plaintiff hopes to avoid the fatal effect of these cases

by insisting that the plaintiffs there did not allege a misrepresentation concerning collateral

selection. Opp. at 32-33. That is irrelevant. Plaintiff does not dispute that—just like here—both

cases alleged that defendants "knew" the CDO's collateral was defective or risky and would fail.

See Landesbank, 2012 WL 1352590, *2; HSH Nordbank, 95 A.D.3d at 188-89 (plaintiff alleged

that CDO underwriter "misrepresent[ed] the risk involved and the manner in which UBS

intended to manage the composition of the reference pool," and "knew" assets in reference pool

15

were riskier than what was disclosed).

Plaintiff separately fails to distinguish HSH Nordbank by claiming that the disclaimers were different. They were not. Just as here, the plaintiff in HSH Nordbank disclaimed that (i) defendants were not "acting as a fiduciary or financial or investment advisor"; (ii) plaintiff would not rely "upon any advice, counsel or representations (whether written or oral)" by defendants; and (iii) investment decisions were based upon the plaintiff's "own judgment and upon any advice from such advisors as it has deemed necessary and not upon any view expressed by [UBS]." Id. at 63; see Def. Br. at 8-9 (describing non-reliance disclaimers in Markov). While the plaintiff in HSH Nordbank also disclaimed reliance on the offering circular itself, and Plaintiff did not, Opp. at 32, that is of no consequence. The Offering Circular separately states that nothing in it "is or shall be relied upon" as a representation by Barclays or SSgA (except for limited portions providing basic descriptions of their businesses), and Barclays and SSgA expressly disclaimed making any representation that anything in the Offering Circular was accurate or complete (again except for limited portions providing basic descriptions of their businesses). Ex. G at iii; Def. Br. at 40. Thus, while Plaintiff did not disclaim reliance on the Offering Circular, that document contains no challenged representations by Defendants.

Additionally, contrary to Plaintiff's protestation, the "No Reliance" disclaimers in the Offering Circular were not "boilerplate." Opp. at 30. As noted in HSH Nordbank, which addressed substantively identical disclaimers, the disclaimers were "far from being merely a 'generalized boilerplate exclusion' of reliance on statements outside the transactional documents …[and] covered the subject matter of the alleged misrepresentation with sufficient specificity to bar the fraud claim." HSH Nordbank, 95 A.D.3d at 201.

Nor is there any requirement that the "No Reliance" disclaimers in the Offering Circular

16

"reveal[]" the substance of alleged misrepresentations, as Plaintiff contends. Opp. at 31.

Landesbank neither discussed nor imposed any such requirement. The cases on which Plaintiff

relies are wholly inapposite. Opp. at 30-31, 32 nn.19-20. Three of the cases do not discuss

reliance, but rather the separate issue of whether there was a misrepresentation in light of a truth-

on-the-market defense. Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 (2d Cir. 2000); In re

MBIA Sec. Litig., 700 F. Supp. 2d 566, 581 (S.D.N.Y. 2010); In re Citigroup, Inc. Bond Litig.,

723 F. Supp. 2d 568, 590 (S.D.N.Y. 2010). A fourth case does not address non-reliance

disclaimers, but instead discusses disclaimer language guaranteeing payment of a bond.

JPMorgan Chase Bank v. Liberty Mut. Ins. Co., 189 F. Supp. 2d 24, 27 (S.D.N.Y. 2002). Two

more cases, Caiola v. Citibank, N.A., New York, 295 F.3d 312 (2d Cir. 2002), and Eternity

Global Master Fund Ltd. v. Morgan Guarantee Trust Co. of N.Y., 2002 WL 31426310, *6

(S.D.N.Y. Oct. 29, 2002), do not concern CDOs, and address challenges to oral representations

made separate from or after the plaintiff signed a general contract and no reliance disclaimer

concerning an ongoing securities trading relationship. Lastly, Plaintiff is left only with M & T

Bank Corp. v. Gemstone CDO VII, Ltd., 23 Misc.3d 1105(A) (N.Y. Sup. Ct. 2009). While M &

T Bank rejected a defense based on non-reliance disclaimer language in a CDO offering circular,

it was issued by a New York state trial judge three years before the Appellate Division in HSH

Nordbank held, in a precedential decision, just the opposite.

    Recognizing the challenge posed by the fact that it is a highly sophisticated investor,

Plaintiff insists that its sophistication "does not presumptively negate a finding of reliance."

Opp. at 33. But Defendants do not point to Plaintiff's or Bayerische Landesbank's

sophistication standing alone. The salient point is that, as a sophisticated investor, Bayerische

Landesbank made express "No Reliance" disclaimers through the Offering Circular. Similarly,

in HSH Nordbank, the court found that as a sophisticated investor, the plaintiff "could have uncovered any misrepresentation of the risk of the transaction through the exercise of reasonable due diligence within the means of a financial institution of its size and sophistication." HSH Nordbank, 95 A.D.3d at 188-89. So too here. Plaintiff ignores that Bayersiche Landesbank was expressly invited to ask questions and request additional information it thought necessary to make its investment decision, including information about Markov's collateral—which, according to Plaintiff, Defendants "knew" would fail. Ex. G at 201.[16]

Finally, Defendants demonstrated that, given disclaimers in the Offering Circular and Markov Marketing Book, Plaintiff cannot seek to impose liability on Defendants with respect to representations outside the Offering Circular, including in the Marketing Book. Def. Br. at 38 n.20. Plaintiff's Opposition does not dispute this, and thus claims based on representations made outside the Offering Circular, ¶¶ 17, 119-20, 134, 136, 144, 145-48, should be dismissed.

**C.    Plaintiff Fails to Allege Any Misrepresentation Attributable to Defendants**

Defendants' moving papers demonstrated that they could not be liable for securities fraud because they did not "make" any statements that were "attributed" to them, as required by Supreme Court and Second Circuit precedent. Def. Br. at 38-40. Yet again, Plaintiff does not dispute the plain, express non-attribution language contained in the Markov Offering Circular. Def. Br. at 40. Instead, Plaintiff fails in its struggle to circumvent this language.

First, Plaintiff contends that Defendants "made" the challenged statements because they prepared or substantially participated in the preparation of the Offering Circular. Opp. at 34-35. This battle has been fought and lost. There is no "issue of fact" here, as Plaintiff asks this Court to find; there is only a bright-line rule. In a case that Plaintiff does not even attempt to

---

[16]    For the same reason, and just as in Landesbank and HSH Nordbank, Plaintiff's assertion that it "could not have uncovered Defendants' complex fraud" fails. Opp. at 33.

distinguish, the Second Circuit recently reaffirmed that an actor other than a securities issuer can be liable for a misrepresentation or omission "for only those statements that are <u>explicitly attributed</u> to them." <u>Pac. Invs. Mgmt. Co. v. Mayer Brown LLP</u> ("<u>PIMCO</u>"), 603 F.3d 144, 155 (2d Cir. 2010), <u>cert denied sub nom. RH Capital Assocs. LLC v. Mayer Brown LLP</u>, 131 S. Ct. 3021 (2011); <u>see also Janus</u>, 131 S. Ct. at 230 ("attribution is necessary"). <u>PIMCO</u> expressly rejected a rule that would extend liability to actors who "create" or "substantially participate[]" in a statement. <u>Id.</u>; <u>accord</u> <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 175-76 (2d Cir. 1998). <u>Janus</u> likewise refused to define "make" as "create," even where, as here, the defendant "was significantly involved in preparing the prospectuses." 131 S. Ct. at 2303-04, 2305.[17]

<u>Second</u>, notwithstanding the clear non-attribution language in the Offering Circular, Plaintiff claims that Defendants "made" the challenged statements because they "delivered" the Offering Documents to Plaintiff. Opp. at 35. This too fails under the bright-line test adopted in <u>Janus</u> and by the Second Circuit. Plaintiff's reliance on <u>In re National Century Financial Enterprises, Inc.</u>, 846 F. Supp. 2d 828 (S.D. Ohio 2012), underscores that Plaintiff is incorrect. Opp. at 36. There, the defendant "told potential investors that [it] was 'specifically designated' to make representations about the notes." <u>Id.</u>, at 861. Unlike here, there was express attribution.

<u>Third</u>, Plaintiff contends that the statements in the Offering Circular were "attributed" to Barclays and SSgA because their logos appear on its cover page. Opp. at 35. Plaintiffs are incorrect. The logos are descriptive; they merely identify Barclays and SSgA as involved in the transaction. The logos are not attributive, and Plaintiff does not cite a single case so holding.

<u>Fourth</u>, Plaintiff argues that Defendants must have made the alleged misrepresentations

---

[17]     Another court in this District recently dismissed federal securities and common law fraud claims for this very reason. <u>See</u> <u>In re Fannie Mae 2008 Sec. Litig.</u>, 2012 WL 3758537, *31-32 (S.D.N.Y. Aug. 30, 2012) (<u>Janus</u> and <u>PIMCO</u> preclude underwriter liability for federal securities or common law claims because "[a]ny role [the underwriter] served in the drafting process, or in preparing and publishing the offering materials is insufficient to impose primary liability under <u>Janus</u>").

because the issuer—Markov CDO I, Ltd.—was merely a shell entity. Opp. at 35. Again,

Plaintiff is incorrect. Like Markov CDO I, Ltd., the issuer in <u>Janus</u>—Janus Investment Fund—

was a "separate legal entity owned entirely by . . . investors[,] . . . [with] no assets apart from

those owned by the investors." <u>Janus</u>, 131 S. Ct. at 2299. Janus Capital Management ("JCM")

effectively operated Janus Investment Fund, and "all of the officers of Janus Investment Fund

were also officers of JCM." <u>Id.</u> The Supreme Court nevertheless held that JCM could not be

liable for securities fraud, because "one who prepares or publishes a statement on behalf of

another" is not the maker of the statement. <u>Id.</u> at 2302. Even where, as here, "investment

advisers exercise significant influence over their client funds," and "it is undisputed that the

corporate formalities were observed," such that the two "remain legally separate entities," a court

may not reapportion liability in the absence of an action by Congress. <u>Id.</u> at 2304 ("We decline

this invitation to disregard the corporate form."). Plaintiff nowhere disputes that Markov CDO I,

Ltd. is a legally separate entity from the Defendants, and nowhere claims that corporate

formalities were not properly observed.

Fifth, Plaintiff claims that because of certain indemnification provisions and limitations

of liability in the Offering Circular, Defendants must have "made" the statements in the Offering

Circular. Once more, Plaintiff is incorrect. As an initial matter, even on its face, Plaintiff's

argument does not apply to Barclays and thus cannot show Barclays made any challenged

statement. In any event, the indemnification provisions in no way undermine the clear non-

attribution language. <u>City of Roseville Employees' Retirement System v. EnergySolutions Inc.</u>,

814 F. Supp. 2d 395 (S.D.N.Y. 2011) is inapposite. Opp. at 36. The indemnification language

was the last in a long line of factors that the district court pointed to in finding attribution. More

critically, the issuer there was wholly owned by the defendant, which notified investors that the

issuer would continue to be a "controlled company" after it went public. <u>City of Roseville</u>, 814

F. Supp. 2d at 417. Plaintiff can point to no such connection between Markov and SSgA.

**D.    <u>Defendants Did Not Concede the Falsity of Their Statements</u>**

Plaintiff falsely contends that "Defendants' motion does not challenge the Complaint's

allegations of false statements, which should therefore be deemed to be conceded." Opp. at 15.

Defendants conceded no such thing. Rather, Defendants carefully noted that Plaintiff's fraud-

based claims would ultimately fail because Plaintiff cannot point to an actionable

misrepresentation. Def. Br. at 40 n.21, 42 n.22. Defendants simply chose not to argue, at the

pleading stage, that Plaintiff failed to adequately plead with specificity a false statement, given

this Court's ruling in <u>Space Coast</u> that the plaintiff there had plausibly alleged a false statement

regarding collateral selection. Def. Br. at 42 n.22.

Indeed, Defendants separately argued that Plaintiff failed to adequately allege with

specificity any misrepresentation other than with respect to collateral selection. Defendants

demonstrated that although the Amended Complaint asserts several other categories of false

statements beyond those about collateral selection—allegedly misleading credit ratings, ¶¶ 133-

40, allegedly misleading statements that Markov was a "High Grade CDO," ¶¶ 141-43, allegedly

misleading statements about the superiority provided by Markov's synthetic collateral, ¶ 144, the

provision of misleading statistical analyses and models, ¶¶ 145-48, and other "private

misrepresentations" during "direct, private communications," ¶ 17—none of these allegedly false

statements are actionable or alleged with particularity. Def. Br. at 40 n.21; <u>see also</u> <u>id.</u> at 10 n.6.

Plaintiff's Opposition does not even address these arguments, let alone refute them. In fact, the

Opposition appears to abandon any claim that such misrepresentations were made. <u>See</u> Opp. at

11-12, 15 (describing alleged misrepresentations). Any claims based on these alleged

misrepresentations, not pertaining to collateral selection, should therefore be dismissed.

**E.**   **Plaintiff Fails to Plead a Violation of Section 20(a) of the Exchange Act Against Barclays Bank and State Street Corporation**

Plaintiff nowhere disputes that, if it has failed to plead a violation of Section 10(b), its

Section 20(a) claims against Barclays Bank and State Street Corporation must also be dismissed.

Plaintiff argues that its generalized allegations regarding State Street Corporation's overall

business strategy are sufficient to state a claim for control-person liability under Section 20(a).

Opp. at 37.  As this Court held in Space Coast, however, a control-person claim requires Plaintiff

to plead that State Street Corporation was a "culpable participant" in the alleged fraud via

"particularized facts of the controlling person's conscious misbehavior or recklessness."  See

Space Coast, 2012 WL 946832, *2; see also In re MBIA, Inc. Sec. Litig., 700 F. Supp. 2d 566,

598 (S.D.N.Y. 2010).  Here, Plaintiff's generalized allegations—which do not even relate to

Markov, much less demonstrate State Street Corporation's "culpable particip[ation]" in the

alleged fraud—are entirely insufficient to meet that standard.  See Kalin v. Xanboo, Inc., 526 F.

Supp. 2d 392, 406-07 (S.D.N.Y. 2007).  As in Space Coast, the control-person claim against

State Street Corporation should be dismissed.  2012 WL 946832, *2.

**F.**   **Plaintiff Fails to Plead Facts Indicating a Domestic Transaction**

As demonstrated in Defendants' Memorandum Regarding Morrison v. National Australia

Bank Ltd., Per the Court's August 17, 2012 Order ("Defendants' Supplemental Memorandum"),

Plaintiff's conclusory assertion that it purchased the Markov notes in New York, ¶ 16, is

insufficient to maintain an action under Section 10(b) of the Exchange Act.  See Absolute

Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 70 (2d Cir. 2012) ("[T]he mere assertion

that transactions 'took place in the United States' is insufficient to adequately plead the existence

of domestic transactions.").  Rather, Plaintiff must allege non-conclusory facts plausibly

demonstrating that (1) irrevocable liability for its purchase was incurred in the United States, or

(2) title to the notes passed to Plaintiff in the United States.  Id. at 67.

The Amended Complaint alleges no facts regarding either prong and thus should be dismissed.  Indeed, with the exception of the single conclusory allegation that Plaintiff purchased the notes in New York, see ¶ 16, Plaintiff points only to allegations about pre-transaction conduct.  See Pl. Supp. Br. at 2 (citing ¶¶ 12, 15, 152, 200).  These are irrelevant under Morrison and Absolute Activist, which hold that only the location of the securities transaction itself may be considered.  Def. Supp. Br. at 2.

In any event, as noted in Defendants' Supplemental Memorandum, the relevant facts regarding where irrevocable liability was incurred and where title passed are uniquely within the possession of Plaintiff, Bayersiche Landesbank, and its agents.  The fact that Plaintiff submitted four declarations and additional documents in connection with its supplemental briefing only underscores this.  For the many reasons identified in Defendants' motion to dismiss, the Amended Complaint should be dismissed.  If the case ultimately survives the pleading stage, however, Defendants will take discovery regarding the facts asserted in the declarations and documents proffered by Plaintiff, and if appropriate, Defendants will assert a defense under Morrison on a fully-developed factual record.

## III.  PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED

The Defendants' moving papers demonstrated that the breach of fiduciary duty claim against SSgA and the derivative aiding and abetting claim against Barclays should be dismissed for the reasons this Court enumerated in Space Coast, 2012 WL 946832, * 3.  Def. Br. at 42.  Plaintiff does not dispute that the same rationale applies here, and fails to articulate any factual basis that would distinguish its claims from those raised by the Space Coast plaintiff.

Despite the Markov Offering Circular's clear disclaimer of a fiduciary relationship between SSgA and Markov note holders, Plaintiff argues that it created a fiduciary relationship

with SSgA by reposing trust and confidence in SSgA's expertise and "fiduciary heritage."  Opp. at 41-42.[18]  As this Court held in Space Coast, however, allegations of a fiduciary relationship based on SSgA's "superior expertise and knowledge" are insufficient.  See Space Coast, 2012 WL 946832, *3.  Although Plaintiff claims that its allegations "go beyond those in Space Coast," Opp. at 41, they actually boil down to the identical claim that SSgA's superior expertise created a fiduciary relationship with Markov note holders.[19]

In an effort to save its claim from this Court's holding in Space Coast, Plaintiff alleges that it had "direct dealings" with SSgA, but never identifies how those "direct dealings" created a separate basis for a fiduciary relationship between the parties.  Opp. at 12-13, 43.  Furthermore, Plaintiff has already represented that it did not rely on any statements aside from those in the Markov Offering Circular, which explicitly disclaimed a fiduciary relationship between the parties.  Ex. G at 206-07.  Although Plaintiff attempts to avoid this disclaimer by distinguishing between its status as a "potential investor" (prior to its purchase of the Markov notes) and a "Markov noteholder" (following its purchase of the Markov notes), this formulation is a dodge: Plaintiff still fails to supply any basis for the alleged fiduciary relationship aside from SSgA's expertise.  Opp. at 43.  As in Space Coast, Plaintiff's allegations regarding SSgA's "superior expertise and knowledge" do not create a fiduciary relationship between the parties, and Plaintiff's claim for breach of fiduciary duty should thus be dismissed.  See Space Coast, 2012 WL 946832, *3.

---

[18]    Plaintiff's new allegation that it reposed trust and confidence in SSgA's "fiduciary heritage" does not appear anywhere in the Amended Complaint, see Am. Compl., nor does this language come from the Markov Offering Circular.  As Plaintiff has already represented that it did not rely on any representations other than those contained in the Markov Offering Circular, Plaintiff's references to this language and other alleged communications with SSgA are irrelevant.  Ex. G at 206-07.

[19]    Plaintiff incorrectly claims that, instead of addressing the allegations in the Amended Complaint, SSgA's motion papers cite to a single allegation in the Space Coast Complaint, when, in fact, the motion papers cite to an allegation in Paragraph 199 of the Amended Complaint.  See Opp. at 41; see also Def. Br. at 42.

As for Plaintiff's aiding and abetting claim, Plaintiff admits that "[a] claim for aiding and abetting a breach of fiduciary duty requires . . . that the defendant knowingly induced or participated in the breach." Opp. at 44.  To allege knowing inducement or participation in a breach, "there must be an allegation that such defendant had actual knowledge of the breach of duty." Kaufman v. Cohen, 307 A.D.2d 113, 125 (1st Dep't 2003); accord Krys v. Butt, 2012 WL 2331485 (2d Cir. June 20, 2012).  Plaintiff's Opposition fails to identify any allegation that Barclays had actual knowledge of an alleged breached duty.  Indeed, Plaintiff fails to allege that Barclays knew SSgA had a fiduciary duty to Plaintiff at all (which SSgA did not), much less that Barclays had actual knowledge of any putative breach of such a duty.

## IV.  PLAINTIFF'S REMAINING CLAIMS AGAINST SSGA SHOULD BE DISMISSED

### A.      Plaintiff Fails to Plead Negligent Misrepresentation Against SSgA

In Landesbank, the Second Circuit affirmed the dismissal of a negligent misrepresentation claim against a CDO manager, reasoning that disclaimers in the CDO's offering documents—just like those present in the Markov Offering Circular—undermined the requisite special relationship with the CDO's note holders. See Landesbank, 2012 WL 1352590, *3.  Plaintiff argues that Landesbank is not relevant to this case, however, and instead attempts to redirect the Court's attention to Aladdin, a case in which the Second Circuit sustained a gross negligence claim against a CDO manager.  Opp. at 38-40.  Unlike Landesbank, however, the Aladdin case did not involve any of the express disclaimers of a special relationship between the parties present in Landesbank and the Markov Offering Circular.  See Aladdin, 2012 WL 3156441, *14-15.  In the wake of the Circuit's decision in Landesbank, there is no basis for finding a special relationship with CDO note holders where, as here, the CDO's offering documents expressly disclaim such a relationship.  Ex. G at 206-07; see Landesbank, 2012 WL

25

1352590, *3; M & T Bank Corp. v. Gemstone CDO VII, Ltd., 68 A.D.3d 1747, 1750 (1st Dep't 2009) ("[T]here is no such special relationship [between a CDO manager and note holders], particularly in light of the facts that the parties had no relationship prior to this arms-length transaction and that offering circulars contained the various limitations and disclaimers.").

Although Plaintiff argues that all of the Kimmel factors required to give rise to a special relationship have been satisfied here, Opp. at 39, the express disclaimers in Markov's Offering Circular completely undermine at least two of the three factors.[20] By purchasing the Markov notes, Plaintiff represented that it was a "sophisticated investor," that it was capable of conducting its own due diligence of the investment, and that it had consulted its own advisors before investing—representations which defeat Plaintiff's claim that SSgA possessed the "unique or special expertise" required under the first Kimmel factor. Ex. G at 206-07; see Landesbank, 2012 WL 1352590, *2; Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 189 (2d Cir. 2004) (finding no special relationship between purchaser and seller of credit default swaps where purchaser was "sophisticated about the credit derivative transactions it was contemplating, was not dissuaded from due diligence, and had the capacity to conduct it").[21]   Furthermore, Markov's Offering Circular explicitly disclaimed a fiduciary or advisory relationship between SSgA and Markov's note holders, negating the "special relationship of trust or confidence" required under the second Kimmel factor.[22]   Ex. G at 206-

---

[20]     The Kimmel factors include: "(1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Opp. at 39.

[21]     Even if SSgA were deemed to possess such expertise, "a party's 'unique or special expertise' alone is insufficient to create an issue of fact concerning the existence of a special relationship." See M & T Bank, 68 A.D.3d at 1750.

[22]     Plaintiff's vague references to other communications with SSgA are entirely insufficient to give rise to a special relationship, particularly because Plaintiff expressly disclaimed reliance on any representations other than those contained in the Markov Offering Circular. Ex. G at 206-07.

07; see Landesbank, 2012 WL 1352590, *3.  An arm's-length business relationship between

sophisticated parties—like the relationship at issue here—is not a special relationship.  See

Aerolineas Galapagos, S.A. v. Sundowner Alexandria, LLC, 74 A.D.3d 652, 653 (1st Dep't

2010) ("The parties to the agreements dealt at arm's length, so the close relationship required to

support the negligent misrepresentation claim was lacking."); see also Silvers v. State, 68 A.D.3d

668, 669 (1st Dep't 2009) ("[T]he arm's length business relationship . . . is not generally

considered to be of the sort of a confidential or fiduciary nature that would support a cause of

action for negligent misrepresentation.").  Aladdin, a case which involved none of the

disclaimers present in the Markov Offering Documents, is not relevant to this analysis.  2012

WL 3156441.  Because Plaintiff has failed to plead a special relationship under the Kimmel

factors, Landesbank and M & T Bank, Plaintiff's negligent misrepresentation claim against

SSgA should be dismissed.

**B.**   **Plaintiff Fails to Plead Breach of Contract Harming a Third Party Against SSgA**

In Defendants' moving papers, SSgA explained that, under the Collateral Management

Agreement ("CMA"), SSgA is only liable if its conduct amounts to fraud or willful misconduct,

or if certain statements in the Offering Circular are untrue, and showed that Plaintiff has failed to

sufficiently allege that SSgA acted fraudulently, which is the core of its claim.  Def. Br. at 24-35.

Plaintiff acknowledges that it seeks to allege that State Street committed fraud, but says that with

regard to the representations in the Offering Circular, it simply has to allege that they are untrue,

since a plaintiff need not plead intent to adequately allege a breach of contract.  Opp. at 45-46.

In the Second Circuit, however, a plaintiff must satisfy Fed. R. Civ. P. 9(b) for any cause

of action premised on fraud.  See Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y.

1998) (noting that "Rule 9(b) does not apply only to claims under RICO and common law fraud,

but also to elements of other claims that are premised on fraud," and applying it to misappropriation and unjust enrichment claims); see also GEO Grp., Inc. v. Comty. First Servs., 2012 WL 1077846, *10 n.4 (E.D.N.Y. Mar. 30, 2012) (collecting cases demonstrating that courts in this Circuit routinely apply Rule 9(b) to common law causes of action that do not require showing of intent, where those claims are premised on allegations of fraudulent conduct); Overseas Private Inv. Corp. v. Furman, 2012 WL 967458, *8-9 (S.D.N.Y. Mar. 14, 2012) (applying Rule 9(b) to counterclaims for breach of contract and tortious interference premised on allegedly fraudulent conduct).  For example, in Sheppard v. Manhattan Club Timeshare Association, Inc., Judge Castel recently applied Rule 9(b) to dismiss a claim for breach of fiduciary duty that was "premised on fraud"—namely, alleged mis-statements in marketing materials.  2012 WL 1890388, *8-9 (S.D.N.Y. May 23, 2012).  The same concept should apply here.  Plaintiff's breach of contract claim is necessarily "premised on fraud"—that is, to show that SSgA is liable under the contract, Plaintiff must show either that SSgA's conduct was fraudulent, or that statements in the Offering Circular were untrue.  See Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004) (applying Rule 9(b) to Section 11 claims based on alleged mis-statements contained in a registration statement, because allegations of "untrue statements" are "classically associated with fraud").  Plaintiff has failed to make that showing.

Rule 9(b) requires Plaintiff to "explain why the statements were fraudulent," among other requirements.  See Shields, 25 F.3d at 1128.  More specifically, in explaining "why the statements were fraudulent," Plaintiff "must plead circumstances providing a factual basis for scienter for each defendant."  See In re DDVAP Direct Purchaser Antitrust Litig., 585 F.3d 677, 695 (2d Cir. 2009).  As set forth supra at 11-15, Plaintiff has completely failed to make that showing.  The allegations as to SSgA's scienter are less than inadequate.  In fact, they create a

strong inference that SSgA had a motive to select appropriate assets, as opposed to allowing Barclays to create a CDO doomed to fail. More specifically, Plaintiff has alleged nothing specific that would suggest SSgA failed to comply with the investment process described in the relevant sections of the Offering Circular. Plaintiff's claim for breach of contract harming a third party against SSgA should thus be dismissed.

## CONCLUSION

For the reasons set forth above and in Defendants' moving papers, the Amended Complaint should be dismissed.

Dated: New York, New York
       September 11, 2012

 Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP   ROPES & GRAY LLP

By: ~Meredith Kotler~                 By: Robert Jones by mk

 Meredith Kotler                        Robert G. Jones
 Arminda B. Bepko                       Daniel J. Maher
 Laura A. Zuckerwise
 Clair B. Kwon                          Prudential Tower
                                        800 Boylston Street
One Liberty Plaza                       Boston, Massachusetts   02199-3600
New York, New York 10006                Telephone:  (617) 951-7564
Telephone:  (212) 225-2000             Facsimile:  (617) 235-045
Facsimile: (212) 225-3999
                                        *Attorneys for Defendants State Street*
*Attorneys for Defendants Barclays Capital Inc., and*   *Global Advisors, State Street Bank and*
*Barclays Bank PLC*                     *Trust Company, and State Street*
                                        *Corporation*

29