USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/5/2012_

◻ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X
BAYERISCHE LANDESBANK, NEW YORK BRANCH,

                    Plaintiff,                    12 Civ. 3294 (LLS)

        - against -                          MEMORANDUM AND ORDER

BARCLAYS CAPITAL, INC., BARCLAYS BANK
PLC, STATE STREET GLOBAL ADVISORS,
STATE STREET BANK AND TRUST COMPANY, and
STATE STREET CORPORATION,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - -X

     The issues raised by defendants' motion to dismiss the
complaint are disposed of as follows, bearing in mind that on
such a motion the court "must accept as true all of the factual
allegations set out in plaintiff's complaint, draw inferences
from those allegations in the light most favorable to plaintiff,
and construe the complaint liberally," Rescuecom Corp. v. Google
Onc., 562 F.3d 123, 127 (2d Cir. 2009), and should dismiss the
complaint if it does not "contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009),
quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).
Allegations of fraud must be dismissed if plaintiff does not
"state with particularity the circumstances constituting fraud."
Fed. R. Civ. P. 9(b).

**A.**

Defendants argue that plaintiff lacks standing to sue in United States courts because it is a domestic branch of a foreign bank.  Plaintiff is the New York branch of Bayerische Landesbank, which is headquartered in Germany.  Under New York law, the domestic branch of a foreign bank is not a separate legal identity from its parent bank.  See Greenbaum v. Svenska Handelsbanken, 26 F.Supp. 2d 649, 652-53 (S.D.N.Y. 1998).  As such, it is the same legal entity as its parent bank and has standing to sue on claims its parent could assert.  Cf. Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 51 (2d Cir. 2012) ("[Bayerische's New York branch] is not separately incorporated, has no legal identity separate from Bayerische Landesbank, and therefore has no standing to assert a claim against Aladdin independent of Bayerische's claim.").  Here, no party claims that Bayerische Landesbank does not have standing.  Dismissal of the complaint for lack of standing is denied.

**B.**

At the Court's request, the parties submitted memoranda of law to address the application, if any, of Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), to this action.  In its memorandum, plaintiff does not allege that the securities at issue were listed on an American stock exchange.  The issue is

whether "irrevocable liability was incurred or title was transferred within the United States," see Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 68 (2d Cir. 2012).

The complaint states that "Barclays created, arranged, structured and underwrote Markov, acted as the initial purchaser of Markov's notes, and marketed and sold Markov's notes in New York, including to BayernLB . . . ." Compl. ¶ 16. Sworn declarations and documents submitted by plaintiff make at least a plausible showing that its London Branch was closed to this business since 2004 and did not purchase the Markov notes (see below), which were purchased by the New York branch.

At least until further proof to the contrary is submitted, dismissal of plaintiff's claims under Morrison is denied.

## C.

Dismissal of counts 1, 3, 4 and 5 is denied.

### 1.

Plaintiff alleges that Barclays Capital, Inc. ("BarCap") and State Street Global Advisors ("SSGA") represented to plaintiff that SSGA, a purportedly independent collateral manager, would select the collateral for the collateralized debt obligation ("CDO") known as Markov CDO I ("Markov"). See Compl. ¶ 119. That qualifies as an "untrue statement of material fact," see C.F.R. § 240.10b-5 (b) (2011), if BarCap in fact

"exerted its control over the selection of collateral assets,"
see Compl. ¶ 89, and "used its control to structure a rigged bet
that would pay off when the collateral assets failed," id. ¶
128.

The complaint alleges facts giving plausibility to those
conclusions, see id. ¶ 77 ("Barclays designed Markov in order to
limit its own exposure to the declining housing market and to
seize the profit opportunity created by the bursting of the
housing bubble."); id. ¶ 50 ("[I]n the event Markov's collateral
failed, Barclays stood to receive the $200 million being held in
reserve as well as the proceeds of the sale of the $200 million
of real assets held as 'cash collateral.'"), and that SSGA chose
to cede power to BarCap, since BarCap likely would have used
another collateral manager had SSGA refused, see id. ¶ 90 ("If
collateral managers insisted upon maintaining independence and
control over collateral selection, banks 'froze out' such
stubborn collateral managers from further CDO collateral
management assignments."); id. ¶ 130 ("Barclays wielded its
'consent' power in a manner that vitiated State Street's
purported role as an independent Collateral Manager and the
duties State Street had promised to perform under the Collateral
Management Agreement. . . . Barclays used its consent power to
cause Markov to include assets Barclays believed would fail, not
good assets, so that Barclays could maximize its profits on its

4

'short' interest in Markov's collateral.").

The Court has already held that allegations substantially similar to the allegations in the instant action adequately state claims for fraud. See Space Coast Credit Union v. Barclays Capital, Inc. et al., No. 11 Civ. 2802 (LLS), 2012 WL 9446832 (S.D.N.Y. Mar. 20, 2012), at *1-2. Defendants argue that the relevant law has changed since the Court's decision in Space Coast. Specifically, defendants rely on a Second Circuit summary order in Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co., No. 11 Civ. 4443, 2012 WL 1352590 (2d Cir. Apr. 19, 2012), which affirmed a district court's decision to dismiss the plaintiff's claims of common law fraud. Landesbank is factually distinguishable from the instant action.    In Landesbank, the plaintiff alleged that the defendants made untrue statements of material fact, misrepresenting to investors the credit quality of assets underlying a CDO, although they had access to confidential due diligence reports that contradicted their public statements. See Landesbank, 2012 WL 1352590, at *2.    The Second Circuit affirmed the district court's dismissal of the plaintiff's fraud claims because the complaint did not specifically identify the reports containing this information, as required by Novack v. Kasaks, 216 F.3d 300, 307-09 (2d Cir. 2000)(an allegation that defendants had access to information that was inconsistent with their alleged misstatements 'must

specifically identify the reports or statements containing this information'), and "The generalized references in the complaint to other due diligence reports commissioned by Goldman are insufficient to sustain Landesbank's pleading burden as to intent." Landesbank, 2012 WL 1352590, at *2.

In contrast, plaintiff in the instant action alleges that BarCap and SSGA misrepresented to plaintiff the nature of their roles in the transaction at issue, an assertion not necessarily confined to documentary proof.

It is clear that the Second Circuit did not intend its decision in Landesbank to work a sweeping change of the law in this circuit. The decision is a summary order, explicitly designated to have no precedential effect. See 2d Cir. R. 32.1(a) ("Rulings by summary order do not have precedential effect.").

Accordingly, the Court will follow its ruling in Space Coast.

**2.**

Defendants argue that because of the vast disclosures in Markov's offering documents, plaintiff, a sophisticated investor, could not have reasonably relied on any alleged misrepresentations. However, "Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally

6

considered inappropriate for determination on a motion to dismiss." Maloul v. Berkowitz, No. 07 Civ. 8525 (LBS), 2008 WL 2876532, at *2 (S.D.N.Y. July 23, 2008). Whether plaintiff's reliance was reasonable is not susceptible to decision as a matter of law, but left to further factual development.

### 3.

The elements of common law fraud in New York are "substantially identical to those governing § 10(b)." Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991). Accordingly, the complaint also states claims for fraud in the inducement and aiding and abetting fraud under New York law.

### D.

Plaintiff does not sufficiently allege that State Street Corporation "was, in some meaningful sense, a culpable participant in" SSGA's alleged fraud, and thus does not state a claim against State Street Corporation for controlling person liability under section 20(a) of the Securities and Exchange Act of 1934. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007). Plaintiff's allegation that State Street Corporation "was aware of or directly participated in the fraud alleged herein, including by concealing adverse material information about the purpose of the Markov CDO, the CDO's collateral selection process, the independence of the collateral manager, the nature of the collateral, and the risk of investing

in the CDO," Compl. ¶ 169, is conclusory.  Plaintiff attempts to support that conclusion by alleging that Sean Flannery, SSGA's Chief Investment Officer "told State Street Corp.'s CFO that State Street would be 'wrestling with mortgage-related issues for some time,' that 'risk levels' were 'elevated,' and that there would be some 'bruises along the way,'" see id. ¶ 30, and that SSGA's CDO management was profitable for State Street Corporation, see id. ¶¶ 31-33.  However, those comments are not precise enough to support the allegation that State Street Corporation was a culpable participant in SSGA's alleged fraud, and plaintiff does not state a section 20(a) claim.  See Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) ("[I]n order to withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness.").  Count 2 is therefore dismissed as against State Street Corporation.

### E.

Plaintiff's allegation that SSGA "had superior access to information and knowledge as to who had been responsible for selecting such collateral and the true quality and value of the collateral portfolio and knowledge as an expert concerning the actual risk of the assets in the portfolio," Compl. ¶ 192, is sufficient to create a plausible inference that SSGA owed a duty

to plaintiff not to act negligently. See Kimmel v. Schaefer, 89 N.Y.2d 257, 263, 675 N.E.2d, 450, 454 (1996) ("[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust. . . ."). "Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." Id. at 264, 675 N.E.2d at 454.

Dismissal of plaintiff's negligent misrepresentation claim (count 6) at the pleading stage is thus inappropriate.

**F.**

Dismissal of counts 7 and 8 is granted.

**1.**

Plaintiff attempts to establish the existence of a fiduciary relationship with SSGA by alleging that SSGA possessed "superior expertise and knowledge of the collateral assets included in or referenced by Markov, the process used in selecting those assets, and the reasons it selected those assets." Compl. ¶ 199. "[M]ere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship." Abercrombie v. Andrew College, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006). As in Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985), where the plaintiff

alleged a fiduciary relationship based only on the defendants' "expertise and superior knowledge," the claim is dismissed, since plaintiff "has provided no support for the proposition that mere expertise in a matter creates fiduciary responsibilities."

Plaintiff endeavors to bolster its allegations by alleging that SSGA "held itself out as performing a fiduciary role for BayernLB in its capacity as Collateral Manager of Markov in numerous direct communications with BayernLB," see Compl. ¶ 200, but does not allege facts giving plausibility to that conclusion.

### 2.

Because a claim for aiding and abetting breach of fiduciary duty requires a breach of fiduciary duty by a primary actor, see Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 49 (2d Cir. 2005), the dismissal of the aiding and abetting claim against BarCap follows from the dismissal of the breach of fiduciary duty claim against SSGA.

### G.

Dismissal of count 9 is denied.  The complaint identifies the contract (the collateral management agreement between SSGA and Markov), and alleges that it was intended for the benefit of Markov's investors, and that SSGA breached that contract by allowing BarCap to select the collateral for Markov's portfolio.

Plaintiff therefore states a claim for breach of contract harming a third-party beneficiary. See Edge Mgmt. Consulting, Inc. v. Blank, 25 A.D.3d 364, 368, 807 N.Y.S.2d 353, 358 (App. Div. 2006) ("One who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental.").

### Conclusion

Defendants' motion to dismiss the complaint (Dkt. No. 13) is granted with respect to count 2 as against State Street Corporation and with respect to counts 7 and 8.  It is denied with respect to all other counts.

Thus, counts 1, 3, 4, 5, 6, and 9 survive.  Count 2 survives with respect to Barclays Bank PLC and SSGA.

Plaintiff has leave to replead within 60 days.

So ordered.

Dated:  New York, New York
        October 26, 2012

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.